## In re Hartman Cemetery

*Snyder, Wert & Wilcox*, for petitioners.

*Arcus F. Shaffer*, for respondents.

HENNINGER, P. J., March 30, 1953.—Mamie M. Bertsch, a great-granddaughter of one Jacob Hartman, filed a petition under the Act of May 19, 1923, P. L. 281, 9 PS §§51 and 52, for the removal of certain

bodies from the Hartman Cemetery, a tract of .04 acres in Upper Saucon Township, Lehigh County, to the Hartman plot in the nearby Friedensville Church Cemetery.

There are 12 burials on the cemetery, the latest one in 1845, with two of the tombstones so weathered that names and dates are illegible.

The cemetery was established by Jacob Hartman, the last one buried thereon, who shortly before his death sold his farm of 167 acres "Excepting and reserving the grave yard on family burying ground for the sole use, benefit and behoof as a family burying place hereafter forever, and which is to be kept and upheld by my said son, Solomon, and my son David, and their heirs and assigns; with free ingress, egress and regress for the uses and purposes aforesaid."

By sundry devises and conveyances the farm became the property of New Jersey Zinc Company, which is the owner of other large tracts in the vicinity.

The New Jersey Zinc Company has elaborate plans for the use of the farm which will involve the immersion of the farmland and would involve the building of high dikes—at places 27 feet high—about the cemetery and along the means of egress which would render the cemetery most unsightly and might endanger the graves themselves.

The petition was joined by 18 other descendants of the original owner and of the latest Hartman owner of the tract. One David Hartman and his sister, Mary L. Pflueger, appeared at the hearing, with four of their children, in opposition to the petition and in their brief they claim to represent nine other heirs, some of whom are children of living heirs of Jacob Hartman. In the absence of a family tree and in the absence of contradictory testimony we accept the allegation in the petition that the heirs therein named are the sole heirs of the interested parties.

Our task has been complicated by the obvious interest of the New Jersey Zinc Company in the outcome of these proceedings and by respondents' skepticism as to the impartiality of the court. We do not intend to permit one or the other to affect our decision in the least.

Our power to grant the prayer of the petition is beyond question. The pertinent portion of section 1 of the Act of May 19, 1923, P. L. 281, above cited, 9 PS §51, is as follows:

"Whenever any private burial ground by reason of the drilling of oil wells, or the opening of mines or quarries in the vicinity thereof, or from any other cause, has become or shall hereafter become unsightly and an unsuitable place for the repose of the dead, the court of quarter sessions of the county in which such burial ground is situated, on petition of the trustee or trustees having charge thereof, or of any person having a relative buried therein, shall have jurisdiction and power to authorize and direct the removal of the remains of all dead from such private burial ground to such other suitable ground as shall be provided by the petitioner or petitioners for the reinterment of the bodies."

The situations authorizing appeal to this act are very broad in scope. The act may be invoked if "from any other cause" besides oil well drilling, mining or quarrying a private burial ground shall become unsightly and an unsuitable place for the repose of the dead. We have not the slightest doubt that in this case if the New Jersey Zinc Company does what it has the right to do up to the very walls of the cemetery and up to the means of egress and ingress thereto, the burial ground will become unsightly and an unsuitable place for the repose of the dead.

Respondents raise six points: (1) The cemetery is in good condition and has a trust fund for its main-

tenance; (2) the zinc company must use its land lawfully; (3) substantial objection to removal; (4) petition is predicated upon proposed wrongful use of adjacent land; (5) preservation of the cemetery is assured; (6) no power to act presently in anticipation of a possible future condition.

Nos. 1 and 5 relate to a large trust fund in the estates of George and Minnie Hartman, the last individual owners of the farm, for the care of this burial ground and for the Hartman plot in Friedensville Cemetery. The point is not that the plot in question will become unsightly from lack of care, but from the necessary future circumstances concerning the land. No matter how well kept this burial plot may be, it will be unsightly in a pit surrounded by dikes. On the other hand, since the trust fund is also for the care of the Hartman plot in Friedensville Cemetery, the graves will be assured of care if moved.

Nos. 2 and 4 operate upon the assumption that the graves cannot be endangered if the zinc company uses its land lawfully. This does not follow. In the first place, its lawful use of the land will render the burial plot unsightly and unsuitable and we cannot interfere with its lawful use of its property regardless of its effect upon esthetic values in relation to the burial plot. Furthermore, even lawful use of its land may injuriously affect the graves and unlawful use might do irreparable damage before it could be recognized as such and enjoined.

Without a family tree, it is difficult for us to weigh the interests of the respective parties. It is not denied that petitioner is a person "having a relative buried thereon" and therefore a proper party to invoke the good offices of the court. While the last individual owner was Minnie Hartman, widow of George Hartman, and while the fund for maintenance of the burial plot comes from her estate, we doubt that her heirs

are persons having an interest in the plot. Petitioner, on the other hand, calls attention to the fact that respondents, by bringing their children upon the record —and they have not actually done so—are multiplying the number in opposition. This case is not to be decided however upon the question of majority rule, but upon the court's discretion under the circumstances. It is respect for the dead that must dictate our policy and not the conflicts among the living.

The last objection is that the burial plot is not presently unsightly and unsuitable but will only become so upon execution of the zinc company's plans. We are convinced that, knowing the zinc company's rights and plans, the burial plot will, beyond any doubt, become unsightly and unsuitable.

Since it is inevitable that the burial plot will be rendered unsightly and unsuitable, certainly petitioner has the present right to invoke the act. We need not wait to see the banks or the unsightly fields or ponds to know that these honored ancestors should now be moved to a plot where their neighbors and descendants are buried. There can be no historic, genealogical, esthetic or spiritual loss in removing these sacred bodies from the sordid center of industry to the shadow of the church.

Now, March 30, 1953, it is found that the Hartman Cemetery is a private burial ground and that by reason of the operation of mines, quarries and other industrial uses in the vicinity of the private burial ground, it has become and will inevitably become unsightly and unsuitable for the repose of the dead, now, therefore, upon the petition of Mamie M. Bertsch who has relations buried thereon, it is ordered and directed that the bodies now buried in the private burial ground be removed and reinterred by petitioner in a careful manner and at her own expense to and in the cemetery of the Friedensville Union Church, provided that

all bodies so removed shall be placed in separate caskets and graves and all headstones, monuments and other marks placed over the remains of the bodies shall be taken and placed as near as can be in the same relative position as before removal.